McMonigle v. McMonigle.

ELIZA McMONIGLE.

v.

BRIDGET McMONIGLE et al.

A bill for partition of lands brought by an heir of an intestate against his widow and his other heirs, set out an alleged agreement by the widow to release her dower in consideration of certain lands which had been conveyed to her by the intestate, and it prayed that she might be required to perform it. Her answer denies the agreement and claims that she contributed largely of her own money to the improvements on intestate's lands in question, but only claims her dower therein and compensation for collecting the rents and taking care of the property. The evidence being insufficient to establish the agreement—*Held*, that the widow was entitled to her dower in the premises; that she must account for the rents received, and is entitled to proper allowances for taxes, repairs and interest upon encumbrances, and also to reasonable compensation for collecting the rents; that she had the right to occupy the house wherein she and her husband lived at the time of his death, her dower never having been assigned; and that her claim for re-imbursement for moneys contributed by her to improvements on the premises cannot be allowed, because it is not claimed in her answer, and the proof is that the moneys so expended were mostly earnings by her in her husband's business, and were voluntarily contributed by her, and were fully repaid by her husband conveying to her the lands above mentioned.

Bill for partition &c. On final hearing upon pleadings and proofs.

McMonigle v. McMonigle.

*Mr. H. A. Drake,* for complainant.

*Mr. R. S. Jenkins,* for Bridget McMonigle, widow.

THE CHANCELLOR.

The bill is filed by Eliza McMonigle, a sister of Patrick Mc-Monigle, late of Gloucester City, in this state, deceased, who died, without issue and intestate, July 4th, 1881, against his widow and the complainant's sisters, who, with her, are the heirs-at-law of the decedent. It alleges that he, in his lifetime, was seized in severalty of five contiguous lots of land in Gloucester City, and that in March, 1863, another lot was conveyed to him and his wife, Bridget, by Richard Price; that in December, 1880, they conveyed that lot to her sister, Catherine Friel, in order that the latter might convey it to her, which she did in March, 1881, and that the consideration of the conveyance by him of his interest in that property to Catherine Friel was an agreement between him and his wife that if he would do so she would release and convey all her interest, including her right of dower, in all the other property, to his sister Eliza, the complainant, for the equal benefit of Eliza and his other sisters, and the bill further states that after having, by that means, induced him to convey his interest in the Price property, she refused to carry out the agreement on her part. Since her husband's death the widow has continued to live upon one of the five lots, in the house in which she and her husband resided at the time of his death.

The bill prays that the widow may be required to perform specifically the before-mentioned alleged agreement, and that she may account for the rents collected by her, and it prays partition of the five lots. By her answer the widow denies the agreement. She avers that the improvements put upon the five lots were placed there by her and her husband jointly, and that she con-tributed thereto a large amount of her own money; but she claims only her dower and compensation for collecting the rents and taking care of the property since her husband's death, which

5

she says she was compelled to do, because no one appeared to claim the property by descent from him.

The evidence upon the subject of the agreement is by no means such as to establish it.    It is principally the testimony of the complainant herself.    She swears to admissions, which she says were made to her by the widow in her husband's lifetime. They are to the effect that Patrick would not agree to execute the deed to Catharine Friel for his wife's benefit, until the latter agreed to join him in a conveyance of the other property to the complainant in trust for the benefit of herself and her sisters.    She also swears that Bridget gave her the reasons which induced her to obtain the conveyance to Catharine Friel.    The statement which she says Bridget made on the latter head is rambling and incoherent, and to a considerable degree, unintelligible.    As to the alleged admissions, Mrs. McMonigle denies absolutely and positively that she made them, and there is no substantial corroboration of the complainant's statement.    Mr. Gorman, the scrivener who drew the instrument, indeed says that when the deed to Catharine Friel was signed by Patrick, he (the scrivener) understood that there was some agreement between Patrick and his wife; that she promised to do something which she had not done, and which Patrick wanted her to do.    He says he did not pay much attention to the conversation, and cannot recollect whether what Patrick wanted his wife to do had any relation to the making of the deed to Catharine Friel or not.    He says, also, that there were no other deeds that he knows of, which Patrick and his wife proposed to execute at that time ; that he thinks Bridget directed him to draw the deed to Catharine Friel, and that Patrick was not with her when she gave the direction ; that Bridget, he thinks, had some trouble to get her husband to his (the scrivener's) office, to sign that deed, but he also says that he cannot say that he recollects any such agreement between them as that which the complainant says Bridget stated to her was the inducement to her husband to sign the Friel deed.    He says he knows of no such agreement.    The testimony of Mrs. Gorman, his wife, furnishes no corroboration. She testifies that Patrick called upon her at a time which she

McMonigle v. McMonigle.

cannot fix, and requested her to tell her husband "not to go on with those papers, for Bridget would not sign them; that he had signed, and she would not." But it does not appear that he had directed the scrivener to draw any papers. Moreover, from the statements of the witness as to Patrick's appearance and manner it would seem probable that at that time he was not entirely sane. Further, on the part of the widow, it is proved that her husband had, as he and she supposed, conveyed his interest in the property to her in November, 1867, by a deed from him to her, for the consideration of $1, which deed was recorded in the same month. Mrs. McMonigle says that the deed to Catharine Friel was made because she had learned, when she was taking proceedings to dispossess a tenant of the property for non-payment of the rent, that that deed was not valid, because it was made by a husband to his wife directly, and she is corroborated in this, to a certain extent, at least, by the testimony of Mr. Gorman.

The widow is entitled to her dower in the property of which partition is sought. She must account for the rents received by her since her husband's death, but will of course be entitled to proper allowances for taxes, expense of repairs, interest upon encumbrances &c. For aught that appears, she is entitled to reasonable compensation for collecting the rents. Her dower has never been assigned to her. She is, therefore, not bound to pay rent for the house which she has occupied since her husband's death. As before stated, it is the house in which she and he dwelt when he died.

The claim which she set up, upon the hearing, to re-imbursement for moneys of her own expended in the purchase of the five lots and improvements thereon in the lifetime of her husband, cannot be allowed. It is quite clear from the evidence that the money which she says she so contributed was, in the main at least, derived from her husband's business and her earnings therein, and was voluntarily contributed to the purchase and improvement of her husband's property. It seems quite probable that the conveyance of the Price property to her secured to her all the money ($650) which she claims to have had when

she was married, and much more besides. She was married in 1858, and that property was conveyed to her and her husband in 1863. Her husband conveyed his interest in it to her in 1867. The consideration of the deed from Price appears to have been $600. They afterwards improved the property by building upon it. It may be remarked that the consideration mentioned in the deed to Catharine Friel is $3,000. This is probably some indication (it may be but slight, however), as to what the improvements upon the property cost, and if so, it may well be that in that property she has all her separate estate. It may be added that, although she alleges in her answer that she spent her own money in improvements upon the property of which partition is sought, she does not allege that she spent any in the purchase of the land, and, as before stated, in the answer she claims only her dower and compensation for collecting the rents since her husband's death.